IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

PAUL LEWIS SIMS,                          )
                                          )
                    *Petitioner,*         )
                                          )
*v.*                                      )     Case No. : CIV-23-533-D
                                          )
DAVID BUSS, Warden,                       )
R. B. Dick Conner Correctional           )
Center, Hominy, OK                        )
                                          )
                    *Respondent.*         )


**REPLY BRIEF OF PETITIONER**


Robert S. Jackson, OBA #22189
1300 NW 10th ST.
Oklahoma City, OK 73106
phone: (405) 602-8614
email: bob@bobjacksonlaw.com

COUNSEL FOR PETITIONER

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

REPLY BRIEF OF PETITIONER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

REPLY REGARDING STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

REPLY TO GROUND 1          Mr. Sims's Constitutional rights to Due Process and a fair trial were violated by the trial court's erroneous admission of evidence of misconduct allegedly committed by Mr. Sims in the country of Morocco. . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

REPLY TO GROUND 2          The trial court's failure to instruct the jury as to the limited purpose for which it could consider evidence of crimes and sexual abuse occurring in Morocco violated Mr. Sims's Constitutional rights to Due Process and a fair trial . . . . . . . . 8

REPLY TO GROUND 3          Mr. Sims was denied the effective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution . . . . . . . . . . . . . . . . . . . . . 12

I.     Record-based instances of ineffective assistance of counsel . . . . . 13

II.    Extra-record instances of ineffective assistance of counsel . . . . . . 14

REPLY TO GROUND 4          Cumulative error . . . . . . . . . . . . . . . . . . . . . . 18

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## **ATTACHMENTS**

*Substitute Exhibit to Appellant's Application for Evidentiary Hearing on Sixth Amendment Claims*, No. F-2020-56 (Okla. Crim. App. Jun 7, 2021) . . . . . . . . . . . . Att. 1

i

# **TABLE OF AUTHORITIES**

## **Federal Cases**

*Andrew v. White*, 62 F.4th 1299 (10th Cir. 2023). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Barkell v. Crouse*, 468 F.3d 684 (10th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Bland v. Sirmons*, 459 F.3d 999 (10th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Cargle v. Mullin*, 317 F.3d 1196 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Duncan v. Henry*, 513 U.S. 364 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Estelle v. McGuire*, 502 U.S. 62 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Graham v. White*, Opinion and Order, No. 23-CV-0164-CVE-SH (N.D. Okla. June 22, 2023). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Harrington v. Richter*, 562 U.S. 26 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Hicks v. Oklahoma*, 447 U.S. 343 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Johnson v. Martin*, 3 F.4th 1210 (10th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Johnson v. Williams*, 568 U.S. 289 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Miller v. Champion*, 161 F.3d 1249 (10th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Nguyen v. Reynolds*, 131 F.3d 1340 (10th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Picard v. Connor*, 404 U.S. 270 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9

*Spears v. Mullin*, 343 F.3d 1215 (10th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Strickland v. Washington*, 466 U.S. 668 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Cronic*, 466 U.S. 648 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Valdez v. Bravo*, 244 Fed. App'x. 864 (10th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . 9

*Zafiro v. United States*, 506 U.S. 534 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## State Cases

*Bramlett v. State*, 422 P.3d 788 (Okla. Crim. App. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Sims v. State*, No. F-2020-56 (Okla. Crim. App. March 17, 2022) (unpub.) (included as Att. 1 to Doc. 5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 13, 15, 16, 17

## Other Authorities

28 U.S.C. § 2254. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 10, 11

Okla. Stat. tit. 12, § 2404 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Okla. Stat. tit. 12, § 2413 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Okla. Stat. tit. 12, § 2414 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

OUJI-CR 9-9. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

OUJI-CR 9-10A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Rule 3.11, *Rules of the Oklahoma Court of Criminal Appeals*. . . . . . . . . . . . . . . . . . . . . . 15

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

PAUL LEWIS SIMS,⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀*Petitioner,*⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
*v.*⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀Case No. : CIV-23-533-D
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
DAVID BUSS, Warden,⠀⠀⠀⠀)
R. B. Dick Conner Correctional⠀)
Center, Hominy, OK⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀*Respondent.*⠀⠀⠀)

## REPLY BRIEF OF PETITIONER

⠀⠀⠀⠀⠀This Brief replies to specific arguments raised by Respondent in its Response Brief (Doc. 14) without abandoning any arguments raised in Mr. Sims's Brief in Support of his habeas petition (Doc. 5).

## REPLY REGARDING STATEMENT OF FACTS

⠀⠀⠀⠀⠀Respondent provides a detailed statement of facts which is portrayed from the state's preferred point of view.  Doc. 14 at 4-9.  Mr. Sims would merely point out that the OCCA did not provide a factual recitation or summary within its opinion.  *See Sims v. State*, No. F-2020-56 (Okla. Crim. App. March 17, 2022) (unpub.) (included as Att. 1 to Doc. 5).  Thus because the state court did not make the factual findings asserted in respondent's statement of facts, no presumption of correctness attaches to Respondent's preferred version of the facts.  *See* 28 U.S.C. § 2254(e)(1).

1

**REPLY TO GROUND 1**    **Mr. Sims's Constitutional rights to Due Process and a fair trial were violated by the trial court's erroneous admission of evidence of misconduct allegedly committed by Mr. Sims in the country of Morocco.**

As a preliminary matter, Respondent spends much of its brief claiming that Mr. Sims's Fourteenth Amendment Due Process claim was not fairly presented to the OCCA and thus should not be reviewed by this court. Doc. 14 at 17-22. Mr. Sims unequivocally argued on direct appeal that his federal constitutional rights were violated by the admission of evidence of his misconduct allegedly occurring in Morocco. *See* Appellant's Brf., p. 12, OCCA No. F-2020-56 (Jan. 15, 2021) ("The erroneous admission of evidence as to what transpired in Morocco served to violate Mr. Sims rights to Due Process and a fair trial as guaranteed . . . the Sixth and Fourteenth Amendments to the United States Constitution"). For purposes of exhaustion, fair presentation merely means that a habeas petitioner has presented the substance of his federal claim in state court. *See, e.g., Picard v. Connor*, 404 U.S. 270, 278 (1971). The Tenth Circuit has explained:

> "Fair presentation" requires more than presenting "all the facts necessary to support the federal claim" to the state court or articulating a "somewhat similar state-law claim." *Anderson v. Harless*. 459 U.S. 4, 6 (1982) (per curiam). "Fair presentation" means that the petitioner has raised the "substance" of the federal claim in state court. *Picard*, 404 U.S. at 278. The petitioner need not cite "'book and verse on the federal constitution,'" *id*. (quoting *Daugharty v. Gladden*, 257 F.2d 750, 758 (9th Cir. 1958)), but the petitioner cannot assert entirely different arguments from those raised in state court.

*Bland v. Sirmons*, 459 F.3d 999, 1011 (10th Cir. 2006). Applying the "fair presentation" rule, Mr. Sims has exhausted this claim and has fairly presented the issue to the state court.

Respondent claims that Mr. Sims's argument that the trial court failed to follow statutory procedures, contained in the Oklahoma Evidence Code, i.e. Okla. Stat. tit. 12, §§ 2404(B), 2413, and/or 2414 violated his rights to Due Process and a Fair Trial under the Sixth and Fourteenth Amendments was insufficient to alert the OCCA as to the federal aspect of his claim. Doc. 14 at 17-18. Respondent urges that Mr. Sims was merely "bookending" a state-law claim with reference to the federal Constitution. *Id*. at 18. However, Mr. Sims's presentation of the claim in the OCCA appears to be exactly what was envisioned by Respondent's cited case of *Duncan v. Henry*, 513 U.S. 364,3 65-66 (1995). Doc. 14 at 17-18 (citing *Duncan*). In *Duncan*, the habeas petitioner asserted a claim of error under the "California Evidentiary Code," and did not "apprise the state court of his claim that the evidentiary ruling of which he complained was not only a violation of state law, but denied him the due process of law guaranteed by the Fourteenth Amendment." 513 U.S. at 366; *see also id.* at 365 ("[i]n his direct appeal in state court, Henry did not label his claim a federal due process violation . . ."). Thus, the Supreme Court found that without specifically asserting a "federal Constitutional right in the state proceedings" that Henry's federal claim had not been fairly presented. *Id*. at 365-66. Here, Mr. Sims did exactly what *Duncan* requires: Mr. Sims "claim[ed] that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment." 513 U.S. at 366; *see also* Appellant's Brf., p. 12, OCCA No. F-2020-56 (Jan. 15, 2021). As shown, Mr. Sims properly presented his claim that the other crimes/sexual propensity evidence of misconduct

allegedly occurring in Morocco was admitted in violation of state law and consequently in violation of his federal constitutional rights.  This claim is properly before the Court.

Next, Respondent argues that Mr. Sims's instant claim fails for lack of clearly established law.  Doc. 14 at 23-28.  Respondent is incorrect.  First, *Hicks v. Oklahoma's*, 447 U.S. 343 (1980), rationale that a federal due process violation occurs when a defendant is deprived of a liberty interest created by state law is broader than the particular facts at issue in *Hicks*.  *See id.* at 24 ("The reach of *Hicks* has been interpreted as quite narrow.") A recent habeas ruling in the Northern District of Oklahoma demonstrates that *Hicks* has been interpreted more broadly than respondent proposes.  *See Graham v. White*, Opinion and Order, pp. 26-27, No. 23-CV-0164-CVE-SH (N.D. Okla. June 22, 2023).  *Graham* explained "whether a state's application of its own laws comport with the Fourteenth Amendment's Due Process Clause is a matter of federal law, not state law."  *Id*. at 26 (citing *Hicks*, 447 U.S. at 345-46).  *Graham* then collected cases showing that Hicks has been interpreted more broadly than Respondent contends.  *See id.* at 26-27 (citing *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971); *Lisenba v. California*, 314 U.S. 219, 236 (1941); *Leatherwood v. Allbaugh*, 861 F.3d 1034, 1043 (10th Cir. 2017); *Eizember v. Trammel*, 803 F.3d 1129, 1145; *Guttman v. Khalsa*, 669 F.3d 1101, 1115 (10th Cir. 2012); *Cummings v. Sirmons*, 506 F.3d 1211, 1237 (10th Cir. 2007); *Benson v. Martin*, 8 F. App'x 927, 930 (10th Cir. 2001); and *Aycox v. Lytle*, 196 F.3d 1174, 1179-80 (10th Cir. 1999)).

As for Mr. Sims's related but distinct claim that the admission of misconduct alleged

to have occurred in Morocco was so prejudicial as to result in a Due Process violation, Respondent ostensibly argues that there is no clearly established law controlling that claim as well. Doc. 14 at 25-27; *see also* Doc. 5 at 21-23 (raising distinct alternative claim that evidence of events in Morocco was so prejudicial as to render Mr. Sims's trial fundamentally unfair. Yet, Respondent's cited authority of *Johnson v. Martin*, 3 F.4th 1210 (10th Cir. 2021) demonstrates that Mr. Sims's fundamental fairness challenge is appropriate for review under § 2254(d). Doc. 14 at 26, 27 n.7. In *Johnson*, the Tenth Circuit expressly rejected the contention that no clearly established law governs claims that the introduction of sufficiently prejudicial evidence can violate the Due Process Clause of the Fourteenth Amendment:

> We have [considered such claims], even after *House's* [*House v. Hatch*, 527 F.3d 1010 (10th Cir. 2008)] holding clarifying the role of clearly established federal law under AEDPA. Specifically, in *Hooks v. Workman*, we reached the merits of the petitioner's due-process claim alleging admission of prejudicial and irrelevant evidence without questioning the existence of clearly established federal law. 689 F.3d 1148, 1180 (10th Cir. 2012); *see also id.* (explaining that petitioner "is entitled to relief only if an alleged state-law error ... 'was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process' " . . . Thus, we reject the State's argument that Johnson's claim fails for want of clearly established federal law.

3 F.4th at 1230. Also, Respondent's cited case of *Andrew* does not somehow shield it from the above language in *Johnson*. Doc. 14 at 27 n.7 (citing *Andrew v. White*, 62 F.4th 1299, 1315 (10th Cir. 2023)). Andrew challenged the admission of "irrelevant" "sexualization evidence", while here Mr. Sims is not challenging the evidence of events occurring in Morocco as irrelevant, instead he challenges such evidence for being admitted in objective violation of state evidentiary rules thereby depriving him of a protected liberty interest and

further challenges the evidence as being so prejudicial to result in a Due Process violation. Thus, *Andrew* offers Respondent no shelter from the fact that clearly established federal law governs this aspect of Mr. Sims's claim.

As for the merits of the instant claim, Mr. Sims would note that  Respondent does not contest that Oklahoma statutory procedures were not followed prior to admission of the other crimes/sexual propensity evidence relating to events allegedly occurring in Morocco.  Doc. 14 at 28-38 (discussing merits of constitutional claim).  Mr. Sims vehemently disagrees with Respondent that his trial was not rendered fundamentally unfair by the repeated and voluminous testimony by DMS of events alleged to occur in Morocco.  He explained the extensive prejudice flowing from such evidence in his prior brief and will not rehash those arguments here.  *See* Doc. 5 at 22-23.   Mr. Sims would however reply to two portions of Respondent's argument.

First, Respondent misconstrues facts in claiming that DMS's testimony about alleged abuse occurring in Morocco was corroborated by the testimony of DMS's stepmother, Tammy Sims.  Respondent claims "[Tammy] Sims testified on one occasion, Petitioner held her down and ejaculated on her stomach." Doc. 33 at 14 (citing Tr. II 140).  This is incorrect; Tammy Sims specifically denied such event happened in response to a leading question about whether she had been truthful with police during the investigation.  Tr. II 140.  Thus, Respondent is incorrect in asserting that Tammy Sims testified to similar abuse as that claimed by DMS.  *Compare* Tr. I 187-88 with Tr. II 140.

6

Second, Respondent argues DMS's trial testimony alone was sufficient to prove by clear and convincing evidence the misconduct alleged to have occurred during the two trips DMS and Mr. Sims took to Morocco. Doc. 14 at 35. Mr. Sims disagrees and respectfully contends that Respondent misconstrues the law governing admission of such bad acts/sexual propensity evidence. The state was required to provide Mr. Sims with pre-trial notice that it intended to introduce the evidence of misconduct occurring in Morocco. And, then, upon objection from defense counsel, the trial court would have been required to determine *prior* to admitting such evidence, that, *inter alia,* the evidence of misconduct in Morocco was proven by clear and convincing evidence. *See, e.g. Bramlett v. State*, 422 P.3d 788, 795 (Okla. Crim. App. 2018) (discussing admissibility requirements of other crimes / bad acts evidence). Here, no such pre-trial determination was made, instead respondent and the OCCA would have DMS's trial testimony pull itself up by its own bootstraps in finding that DMS's trial testimony alone proved the allegations of misconduct in Morocco by the level of clear and convincing evidence.[1] *See* Doc. 14 at 35-36. Respondent further highlights the inherent problem with the testimony of Morocco – DMS testified that a "sex crime" was committed against her in Morocco. *Id*. As explained in his Brief in Support, such testimony

---

[1] In making this argument Respondent incorrectly criticizes Mr. Sims and casts the argument that DMS's allegations about Morocco were not proven by clear and convincing evidence as "utterly without merit because Petitioner fails to acknowledge that DMS's testimony is *evidence*." Doc. 14 at 35 (alteration in original). Yet, Mr. Sims specifically acknowledged that DMS's testimony constitutes evidence but that the same failed to rise to the level to allow admission of the challenged events transpiring in Morocco. *See* Doc. 5 at 20 ("The evidence of misconduct occurring in Morocco consisted solely of DMS's testimony").

could have caused Mr. Sims's jury to impermissibly convict him for crimes it believed to have occurred in Morocco and for which the state was without jurisdiction to prosecute. *See* Doc. 5 at 21-22.  The Due Process Clause of the Fourteenth Amendment will not tolerate such a result.

As shown in his Brief in Support of his habeas petition and as discussed herein, Mr. Sims's Constitutional rights were violated as result of the erroneous admission of extensive and prejudicial evidence alleging misconduct to have occurred in Morocco, which was admitted in violation of state evidentiary rules for which Mr. Sims has a federal liberty interest and was so prejudicial as to render the trial fundamentally unfair.   Mr. Sims respectfully requests the Court issue the Writ.

**REPLY TO GROUND 2**          **The trial court's failure to instruct the jury as to the limited purpose for which it could consider evidence of crimes and sexual abuse occurring in Morocco violated Mr. Sims's Constitutional rights to Due Process and a fair trial.**

Similar as to its defenses to Ground 1, Respondent asserts that the federal constitutional violations attendant the trial court's failure to issue an appropriate limiting instruction were not fairly presented to the OCCA, and even if presented, there is no clearly established federal law governing the claim.  Doc. 14 at 41-46.  Mr. Sims respectfully contends Respondent is incorrect on both points.  As for fair presentation, Mr. Sims specifically alerted the state court as to the federal aspect of his claim.  Appellant's Brf., pp. 19-20, OCCA No. F-2020-56 (Jan. 15, 2021) ("The trial court's failure to give an appropriate

limiting instruction deprived Mr. Sims of his rights to Due Process and a fair trial in violation

of . . . the Sixth and Fourteenth Amendments of the United States Constitution.").  For the

same reasons discussed above in relation to Ground 1, this is all that was required to fairly

present the substance of Mr. Sims's instant claim of constitutional error in state court.  *See,*

*e.g, Picard*, 404 U.S. at 278 (finding habeas petitioner need not cite "book and verse on the

federal constitution" to satisfy fair presentation requirement).

      Second, with respect to clearly established federal law, this Court and the Tenth

Circuit regularly review challenges to jury instructions on federal habeas review.  *See, e.g.,*

*Valdez v. Bravo*, 244 Fed. App'x. 864, 868 (10th Cir. 2007); *Spears v. Mullin*, 343 F.3d

1215, 1244 (10th Cir. 2003) ("On federal habeas review, we review the alleged error in

failing to instruct on voluntary intoxication in the context of the entire trial, only for the

denial of fundamental fairness and due process."); *Nguyen v. Reynolds*, 131 F.3d 1340, 1357

(10th Cir. 1997).  Given, these courts' willingness to review such claims, Respondent's

arguments about lack of clearly established federal law appear a non-starter.[2]  Further,

Respondent claims that because the habeas petitioner lost in *Estelle v. McGuire*, 502 U.S. 62

(1991), that somehow *Estelle* does not provide clearly established federal law.  Doc. 14 at

45.  Or, Respondent claims that Mr. Sims cannot demonstrate the OCCA's ruling was an

unreasonable application of *Estelle* because the Supreme Court found the jury instruction at

---

[2] In the next portion of its brief, upon discussing the merits, Respondent seems to concede as much in stating the Tenth Circuit reviews claims of omitted jury instructions to determine whether such omission rendered a trial fundamentally unfair.  Doc. 14 at 46-47 (citing *Maes v. Thomas*, 46 F.3d 979, 985 (10th Cir. 1995) and *Nguyen v. Reynolds*, 131 F. 3d 1340, 1357 (10th Cir. 1997)).

issue there did not "deny due process of law." *Id.*; *Estelle*, 502 U.S. at 75. Respondent is incorrect. *Estelle* provides the clearly established federal law for which this Court will conduct its reasonableness review under § 2254(d)(1). *Estelle* sets out the general rule for review of jury instruction errors in the habeas context – "The only question for us is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." 502 U.S. at 72 (internal quotations omitted). *Estelle* involved a child abuse prosecution with an instruction that the jury could consider "prior injuries" to the child in determining guilt for the crime charged. *Id.* at 75. In finding this prior injury instruction not to have resulted in a due process violation, *Estelle* noted that "the trial court guarded against possible misuse of the instruction by specifically advising the jury that the '[prior injury] evidence, if believed, was not received, and may not be considered by you[,] to prove that [McGuire] is a person of bad character or that he has a disposition to commit crimes,'" and "[e]specially in light of this limiting provision, we reject McGuire's claim." *Id.* So, the habeas petitioner in *Estelle* received what Mr. Sims did not, a limiting instruction which advised the jury of the limited purpose for which it may consider the challenged evidence. *See id.* at n.5 (discussing concerns with propensity evidence and if Due Process Clause would be violated if state law permitted use of prior crimes evidence to show a propensity to commit the charged offense). Thus, review of *Estelle*, including its emphasis upon the fact that a limiting instruction was given in that case, militates in favor of granting habeas relief here where no limit was placed upon how the jury could consider evidence of the crimes

DMS alleged Mr. Sims had perpetrated against her in Morocco.

Moving on to Respondent's merits arguments that the lack of a limiting instruction did not render Mr. Sims's trial fundamentally unfair. Mr. Sims observes that (1) Respondent does not dispute that there are two on point limiting instructions contained within the Oklahoma Uniform Jury Instructions which should be given when other crimes/bad acts and/or sexual propensity evidence is admitted at trial (*see* Doc. 5 at 25-26 (reproducing OUJI-CR 9-9 and 9-10A)); (2) Respondent does not dispute that neither such jury instruction was given; (3) Respondent does not dispute that no oral limiting instruction was given to the jury, either contemporaneously with admission of the evidence or otherwise; (4) Respondent does not dispute that Oklahoma Law requires a limiting instruction be given; and (5) Respondent does not dispute that a limiting instruction should have been given to Mr. Sims's jury.

With respect to its AEDPA analysis, respondent claims Mr. Sims has failed to assert that the state court decision was contrary to and/or an unreasonable application of federal law and has therefore "forfeited" any argument that the state court decision runs afoul of § 2254(d). Doc. 14 at 47. Respondent overlooks that Mr. Sims argued as much in his Brief in support; "Here, the OCCA conducted merits review of the underlying claim and declined to find any 'plain or obvious error.' However, that decision was contrary to clearly established federal law and/or was unreasonable as to the state court's application of the law or determination of the facts." Doc. 5 at 25. Thus, Mr. Sims has properly challenged the

OCCA's decision pursuant the framework of the AEDPA.

Next, Respondent claims the arguments of the prosecuting attorney in opening argument served to ameliorate the absence of a necessary limiting instruction. Doc. 14 at 50 (citing Tr. I 167-68). However, this argument should carry little weight considering that Mr. Sims's jury was specifically instructed that "No statement or argument of the attorneys is evidence" O.R. 173, Instruction No. 10. And, this Court must presume that Mr. Sims's jury followed its instructions. *See Zafiro v. United States*, 506 U.S. 534, 540–41 (1993). Lastly, Respondent concedes that the evidence of misconduct allegedly occurring in Morocco was prejudicial, but then argues the absence of a limiting instruction was not "outcome determinative." Doc. 14 at 49. Mr. Sims disagrees; for the reason's stated in his Brief in Support, which for brevity will not be repeated here, the absence of a limiting instruction rendered the trial *fundamentally unfair* and deprived Mr. Sims of Due Process, which are the relevant considerations for this Court upon habeas review. Doc. 5 at 27-29.

For the reasons stated in his Brief in Support and herein, the admission of evidence concerning alleged abuse occurring in Morocco, which was as the same type as the charged offenses, absent a proper limiting instruction served to violate Mr. Sims's constitutional rights to Due Process and a fair trial. He respectfully requests the Court issue the Writ.

**REPLY TO GROUND 3**          **Mr. Sims was denied the effective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution.**

Respondent declines to offer any procedural defenses to Mr. Sims's claims of

ineffective assistance of counsel.  Thus, Respondent concedes such claims are properly before the Court.

I.    **Record-based instances of ineffective assistance of counsel.**

Mr. Sims asserts two record-based instances of ineffective assistance in relation to trial counsel's failure to object to the admission of evidence concerning events alleged to have occurred in Morocco and counsel's failure to request, or otherwise object to the absence of, a limiting instruction to prevent the jury from erroneously convicting Mr. Sims for crimes occurring in Morocco.  *See* Doc. 5 at 32-35.  As discussed in the Brief in Support, counsel's conduct was severely deficient.  *Id*.  The OCCA found, albeit unreasonably, that both failures were "presumptively reasonable strategic decisions."  Doc 5, Att. 1 at 8 (*Sims v. State*, No. F-2020-56 (Okla. Crim. App. March 17, 2022).  The OCCA did not elaborate on its finding of reasonable strategy, yet Respondent attempts to fashion a unsupported strategic explanation for counsel's shortcomings.  Respondent claims it was reasonable for trial counsel to not object to the evidence of misconduct in Morocco and not request a limiting instruction be given because "[t]he record indicates that all parties, including the trial court, believed that the evidence was admissible as *res gestae*."  Doc. 14 at 53.  Respondent is mistaken – the trial record actually refutes this assertion and the OCCA declined to cast the evidence as *res gestae* despite Respondent attempting a similar argument on direct appeal.[3]

---

[3] Respondent concedes later in its Brief that the OCCA's express omission of *res gestae* as a basis for its decision "perhaps suggests the [OCCA] did not believe the evidence was proper *res gestae*."  Doc. 14 at 54.

There is no evidence in the trial record to support that defense counsel believed the challenged evidence was properly *res gestae*. Prior to trial the State filed it's "Notice of Intent to Use Evidence of Other Bad Acts/Crimes or ***Res Gestae*** Evidence . . ." O.R. 43-44 (emphasis added). Despite being titled, *inter alia*, as a notice of "*res gestae*" evidence, completely absent from the pleading is any reference whatsoever of DMS's allegations of her being sexually abused by Mr. Sims in Morocco, let alone any mention that the State intended to admit the same as *res gestae* evidence. The State's Notice is affirmative proof that evidence of abuse allegedly occurring in Morocco was not admitted as *res gestae* evidence at the time of trial. Likewise, no reference to "*res gestae*" is included within the 3-volumes of trial transcripts. Mr. Sims respectfully contends that the state's phantom argument about the challenged evidence actually being *res geste* cannot support a finding of reasonable strategy so as to overcome the patently deficient performance of trial counsel. As shown in his brief in support, Mr. Sims was prejudiced as result of these deficiencies, either singularly or cumulatively. *See* Doc. 5 at 33, 35.

As discussed in his Brief in Support and herein, trial counsel was constitutionally ineffective for failing to object to the other crimes / sexual propensity evidence relating to events allegedly occurring in Morocco and for failing to obtain a limiting instruction in relation to the same. The Writ should issue.

## II.    Extra-record instances of ineffective assistance of counsel.

Mr. Sims raised numerous outside-the-record claims of ineffective assistance of trial

14

counsel in state court pursuant to Rule 3.11, *Rules of the Oklahoma Court of Criminal Appeals*. He provided affidavits and supporting materials with his application for evidentiary hearing in the OCCA. *See* Rule 3.11 App and Supporting Exhibits, OCCA No. F-2020-56 (January 15, 2021). In disposing of these claims, the OCCA explained it reviewed the Application and supporting exhibits and declined to grant an evidentiary hearing because it felt those materials had "not shown clear and convincing evidence of a strong possibility that trial counsel was ineffective." Doc 5, Att. 1 at 8 (*Sims v. State*, No. F-2020-56 (Okla. Crim. App. March 17, 2022). The OCCA essentially accepted Mr. Sims's proffered facts in his 3.11 application and attached exhibits as true and then declined to grant an evidentiary hearing, because it determined, albeit unreasonably, that such proffered facts would not support a finding of ineffective assistance of trial counsel even if proven at a hearing. *See id*. at 7 (discussing Rule 3.11 procedure). Ostensibly, Respondent thinks the state court decision was contrary to and/or an unreasonable application of federal law, because it parts ways with the OCCA in its analysis. Instead of accepting Mr. Sims's proffered facts, Respondent disputes many of them in arguing that trial counsel was not deficient. *See* Doc. 14 at 57-59 (disputing that trial counsel only visited Mr. Sims in jail on one occasion and otherwise did not adequately consult with Mr. Sims prior to trial); *see id.* at 61 (disputing whether appeal counsel's legal assistant was being truthful in stating in an affidavit (Rule 3.11 App., Exh 2, Affidavit of Lori Hanson) that an open records request to the Canadian County Jail yielded a response that trial counsel had only visited Mr. Sims on one occasion);

15

*see id.* at 63-66 (disputing whether counsel failed to interview or obtain testimony of witnesses in Morocco or if counsel made a reasonable decision not to do so); *see id.* at 67 (disputing whether counsel failed to utilize photographs from the Morocco trips which could have called into question the veracity of DMS about the abuse she alleged to have happen during those trips); *see id.* at 69-70 (disputing whether counsel made a conscious decision not to utilize or failed to utilize forensic reports and the interview DMS's sister, who shared a room with DMS, and who denied that Mr. Sims was abusing DMS); *see id.* at 72-74 (disputing whether there were significant inconsistencies between DMS's trial testimony and a statement she had provided to police when she initially disclosed the alleged abuse).  Given that Respondent has placed these outside the record facts in dispute, which if proven would entitle Mr. Sims to relief, this Court should grant an evidentiary hearing.  *See* Doc. 5 at 58 (requesting a full and fair evidentiary hearing as to any issues disputed by respondent).

A habeas petitioner, such as Mr. Sims, is entitled to an evidentiary hearing if he has attempted to develop the facts below and if his allegations, if true, would entitle him to relief. *Miller v. Champion*, 161 F.3d 1249, 1253 (10th Cir. 1998).  Because the OCCA denied Mr. Sims's Rule 3.11 Application for Evidentiary Hearing (Doc. 5, Att. 1 at 8), the state court did not afford Mr. Sims full and fair fact determinations.  *See Barkell v. Crouse*, 468 F.3d 684, 692-94 (10th Cir. 2006) ("Habeas applicants who have not received an evidentiary hearing in state court may be entitled to an evidentiary hearing in federal court.")  Thus, because Respondent has placed many of the facts underlying Mr. Sims's outside-the-record claims

of ineffective counsel in dispute, Mr. Sims respectfully contends an evidentiary hearing in this Court is warranted.

Next, Mr. Sims argued in his Brief in Support that trial counsel's failure to communicate adequately with him prior to trial rose to the level of a constructive denial of counsel as envisioned by the Sixth Amendment. *See* Doc. 5 at 42. In this circumstance, prejudice may be presumed. *See id.* (citing *United States v. Cronic*, 466 U.S. 648, 658-59 (1984)). The OCCA failed to address this *Cronic* aspect of the claim, yet respondent contends the AEDPA may still operate as a restriction on this Court's ability to grant relief, because it must be presumed the OCCA addressed Mr. Sims's claim that prejudice must be presumed. Doc. 14 at 59-60. Despite Respondent's arguments, Mr. Sims continues to believe de novo review is appropriate. The presumption of a merits adjudication is overcome, because "there is reason to think some other explanation for the state court's decision is more likely." *Harrington v. Richter*, 562 U.S. 26, 99-100 (2011); *see also id.* at 99 ("it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary"). Here, the OCCA specifically referenced and stated that is was applying the *Strickland v. Washington*, 466 U.S. 668 (1984), standard in disposing of Mr. Sims's claims. Doc. 5, Att. 1 at 7 ("We review this claim under ... *Strickland* ... requiring Appellant to show . . . that Appellant's defense was prejudiced by [counsel's deficient performance]"). Thus, the OCCA applied *Strickland's* two-part standard, requiring Mr. Sims to show deficient performance and

17

prejudice, and simply overlooked the *Cronic* claim.  *See Johnson v. Williams*, 568 U.S. 289, 302 (2013) ("an irrebuttable presumption that state courts never overlook federal claims would occasionally miss the mark.").  This Court may conduct its review de novo.

Lastly, Respondent misstates the record with respect to Mr. Sims's contention that entry and exit stamps from his passport should have been presented at trial.  Doc. 14 at 69. Respondent claims there were no entry and exits stamps for 2016 contained in the passport, and therefore the passport "could not have helped [Mr. Sims] in establishing that the first trip to Morocco only lasted 3 weeks as opposed to the 3 months that DMS testified to.  *Id.*  When Mr. Sims filed his Rule 3.11 application, a photocopy page was inadvertently omitted from Exh. 8, Att. 1.  A substitute exhibit containing entry and exits stamps showing the first Morocco trip spanned from August 11 through September 1, 2016 was filed in the OCCA on June 7, 2021.  This substitute exhibit is attached hereto as Att. 1 for the Court's convenience.

For the reasons discussed in his Brief and Support and herein, Mr. Sims received the ineffective assistance of trial counsel in relation to counsel's failure to communicate and consult with his client, failure to investigate, obtain, to utilize evidence to refute DMS's allegations, and failure to utilize available evidence to impeach and cross-examine DMS. He respectfully requests the Court issue the Writ.

**REPLY TO GROUND 4**          **Cumulative error.**

Mr. Sims stands largely on the arguments presented in Ground Four of his Brief in

Support of his habeas petition.  Doc. 5 at 56-58.  He would, however, reply to Respondent's contention that relief for cumulative error is inappropriate because he has shown no "synergy" among the errors incurred by him.  Doc. 14 at 80.  The synergy amongst Mr. Sims's claims of constitutional error is readily apparent and centers around the prejudicial and improperly admitted evidence of misconduct allegedly occurring in Morocco.  First, the trial court erroneously admitted such evidence in violation Mr. Sims's constitutional rights; second, the trial court failed to give an appropriate limiting instruction informing the jury of the limited purpose for which it could consider such evidence; third, trial counsel failed to object to the admission of such evidence or request a limiting instruction; and fourth, trial counsel failed to mount a reasonable investigation into such evidence, which had he done so he would have been able to refute DMS's allegations of events occurring in Morocco.  Thus, there is an inherent synergy amongst Mr. Sims's claims of constitutional error and should such errors be found individually harmless, when considered collectively they should warrant this Court's grant of relief.  *See Cargle v. Mullin*, 317 F.3d 1196, 1221 (2003) (granting habeas relief due to "inherent synergistic" effect of errors).

## CONCLUSION

As shown in his Brief in Support and herein, Mr. Sims's constitutional rights were violated; he respectfully requests the Court issue the Writ and requests the Court grant any other relief it may deem appropriate to dispose of this matter as law and justice require.

Respectfully submitted,

/s *Robert S. Jackson*
Robert S. Jackson, OBA #22189
1300 NW 10th ST.
Oklahoma City, OK 73106
phone: (405) 602-8614
email:   bob@bobjacksonlaw.com

COUNSEL FOR PETITIONER

## CERTIFICATE OF SERVICE

I hereby certify that on the date of filing, I electronically transmitted the attached document to the Clerk of Court using the ECF system for filing and transmittal of a Notice of Electronic Filing to the following ECF registrant(s):

Samantha K. Oard, Assistant Attorney General
e-mail: fhc.docket@oag.state.ok.us

s/ *Robert S. Jackson*
Robert S. Jackson