IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

PAUL LEWIS SIMS,             )
                                 )
          *Petitioner,*       )
                                 )
*v.*                             )     Case No. : CIV-23-533-D
                                 )
DAVID BUSS, Warden,     )
                                 )
                                 )
                                 )
         *Respondent.*    )

**OBJECTIONS TO REPORT AND RECOMMENDATION**

Robert S. Jackson, OBA #22189
1300 NW 10th ST.
Oklahoma City, OK 73106
phone: (405) 602-8614
email: bob@bobjacksonlaw.com

COUNSEL FOR PETITIONER

TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

OBJECTIONS TO REPORT AND RECOMMENDATION. . . . . . . . . . . . . . . . . . . . . . . 1

Ground One          Mr. Sims's Constitutional rights to Due Process and a fair trial were violated by the trial court's erroneous admission of evidence of misconduct allegedly committed by Mr. Sims in the country of Morocco . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

i.          The Report and Recommendation is incorrect in concluding Mr. Sims's claim is unexhausted . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ii.          The Report and Recommendation's alternative rationale that the OCCA's decision did not violate the AEDPA is incorrect . . . . . . . . 5

Ground Two          The trial court's failure to instruct the jury as to the limited purpose for which it could consider evidence of crimes and sexual abuse occurring in Morocco violated Mr. Sims's Constitutional rights to Due Process and a fair trial. . . . . . . 10

i.          The Report and Recommendation is incorrect in concluding Mr. Sims's claim is unexhausted . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

ii.          The Report and Recommendation's alternative rationale that the OCCA's decision did not violate the AEDPA is incorrect . . . . . . . 11

Ground Three          Mr. Sims was denied the effective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution . . . . . . . . . . 14

i.          Cold-record instances of attorney ineffectiveness relating to the Morocco Evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

ii.          Extra-record instances of ineffectiveness for counsel's failure to communicate with Mr. Sims, failure to conduct an adequate investigation, and failure to utilize discovery materials . . . . . . . . 18

i

Ground Four          The accumulation of errors acted to deprive Mr. Sims of his
                     Constitutional rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Request for Certificate of Appealability Pursuant to Rule 11, *Rules Governing Section 2254
     Cases* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Conclusion  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

# TABLE OF AUTHORITIES

## Cases

*Andrew v. White*, 604 U.S. __, 145 S.Ct. 75 (2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 13

*Bland v. Sirmons*, 459 F.3d 999 (10th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Brewer v. State*,  450 P.3d 969 (Okla. Crim. App. 2019) . . . . . . . . . . . . . . . . . . . . . . . . 8

*Burks v. State*, 594 P.2d 771 (Okla. Crim. App. 1979). . . . . . . . . . . . . . . . . . . . . . . . . 16

*Byrd v. Workman*, 645 F.3d 1159 (10th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Cargle v. Mullin*, 317 F.3d 1196 (10th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 22

*Duncan v. Henry*, 513 U.S. 364 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 11

*Estelle v. McGuire*, 502 U.S. 62 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Fisher v. Gibson*, 282 F.3d 1283 (10th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Harrington v. Richter*, 562 U.S. 26 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Hicks v. Oklahoma*, 447 U.S. 343 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

*Horn v. State*, 204 P.3d 777 (Okla. Crim. App. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Lisenba v. California*, 314 U.S. 219 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Nguyen v. Reynolds*, 131 F.3d 1340 (10th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Ochoa v. Workman*, 669 F.3d 1130 (10th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Payne  v. Tennessee*, 501 U.S. 808 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Picard v. Connor*, 404 U.S. 270 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11

*Revilla v. Gibson*, 283 F.3d 1203 (10th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Spears v. Mullin*, 343 F.3d 1215 (10th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Strickland v. Washington*, 466 U.S. 668 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 20

*Thornburg v. Mullin*, 422 F.3d 1113 (10th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Cronic*, 466 U.S. 648 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Soto Hernandez*, 849 F.2d 1325 (10th Cir. 1988). . . . . . . . . . . . . . . . . 20

*Valdez v. Bravo*, 244 Fed. App'x. 864 (10th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Vitek v. Jones*, 445 U.S. 480 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Wood v. Allen*, 558 U.S. 290 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## Statutes

28 U.S.C. § 2254. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 11, 19

Okla. Stat. tit. 12, § 2413 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 16

Okla. Stat. tit. 12, § 2414 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 16

## Other Authorities

OUJI-CR 9-10A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

OUJI-CR 9-9. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

Rule 11, *Rules Governing Section 2254 Cases*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Rule 3.11, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. . . 18

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

PAUL LEWIS SIMS,                          )
                                          )
               Petitioner,                )
                                          )
v.                                        )          Case No. : CIV-23-533-D
                                          )
DAVID BUSS, Warden,                       )
                                          )
                                          )
               Respondent.                )

## OBJECTIONS TO REPORT AND RECOMMENDATION

*Comes now*, Petitioner, Paul Lewis Sims, and objects to the Report and Recommendation of the Magistrate Judge. Doc. 20. The Report and Recommendation advised the parties of their right to file objections by August 11, 2025. Doc. 20 at 48. However, Mr. Sims sought and received an extension of time of 30 days or until September 10, 2025 to file objections. Doc. 23. Thus, these Objections are timely filed. In light of the following objections, Petitioner requests that the Writ be granted.

Petitioner generally disagrees with the Magistrate's conclusions as to each of the Constitutional claims raised, and therefore objects to the Report and Recommendation. Petitioner's specific objections as to the Report and Recommendation's treatment of his individual grounds for relief are as follows:

**Ground One**          **Mr. Sims's Constitutional rights to Due Process and a fair trial were violated by the trial court's erroneous admission of evidence of misconduct allegedly committed by Mr. Sims in the country of Morocco.**

1

Mr. Sims's Ground One claim was addressed at pages 10-24 of the Report and Recommendation.  Doc. 20.  Ground One centered around extensive allegations that Mr. Sims committed numerous acts of sexual abuse against DMS in the foreign country of Morocco.  This evidence had the effect of violating Mr. Sims's right to Due Process and rendered his trial fundamentally unfair.  The Magistrate Judge offered two rationales that relief should be denied.  The first basis was that Mr. Sims failed to exhaust his Constitutional claims in state court.  *Id*. at 12-14.  And, the second alternative basis, was that the claim should be denied on the merits because the state court decision was not contrary to or an unreasonable application of clearly established federal law, nor was it unreasonable as to the facts.  *Id*. at 17-24.  Mr. Sims disagrees with both conclusions, and therefore objects to the Report and Recommendation.

### i.    The Report and Recommendation is incorrect in concluding Mr. Sims's claim is unexhausted.

The Report and Recommendation finds Ground One should be denied because Mr. Sims "relied exclusively on Oklahoma case law and rules of evidence to argue that the state district court plainly erred in allowing the Morocco evidence."  Doc. 20 at 14.  Mr. Sims respectfully disagrees and contends that he raised the substance of his federal claims in the OCCA.  Mr. Sims unequivocally argued on direct appeal that his federal Constitutional rights were violated by the admission of evidence of his misconduct allegedly occurring in Morocco.  *See* Brief of Appellant, p. 12, OCCA No. F-2020-56 (Jan. 15, 2021) (reproduced at Doc. 14-3)("The erroneous admission of evidence as to what transpired in Morocco served

2

to violate Mr. Sims rights to Due Process and a fair trial as guaranteed . . . the Sixth and

Fourteenth Amendments to the United States Constitution"). For purposes of exhaustion, fair

presentation merely means that a habeas petitioner has presented the substance of his federal

claim in state court. *See, e.g., Picard v. Connor*, 404 U.S. 270, 278 (1971). The Tenth

Circuit has explained:

> "Fair presentation" requires more than presenting "all the facts necessary to
> support the federal claim" to the state court or articulating a "somewhat similar
> state-law claim." *Anderson v. Harless*. 459 U.S. 4, 6 (1982) (per curiam).
> "Fair presentation" means that the petitioner has raised the "substance" of the
> federal claim in state court. *Picard*, 404 U.S. at 278. The petitioner need not
> cite "'book and verse on the federal constitution,'" *id*. (quoting *Daugharty v.
> Gladden*, 257 F.2d 750, 758 (9th Cir. 1958)), but the petitioner cannot assert
> entirely different arguments from those raised in state court.

*Bland v. Sirmons*, 459 F.3d 999, 1011 (10th Cir. 2006). Applying the "fair presentation"

rule, Mr. Sims exhausted this claim in state court.

Review of the Supreme Court case of *Duncan v. Henry*, 513 U.S. 364 (1995), supports

Mr. Sims's position that he fairly presented his Constitutional Claims to the OCCA. In

*Duncan*, the habeas petitioner asserted a claim of error under the "California Evidentiary

Code," and did not "apprise the state court of his claim that the evidentiary ruling of which

he complained was not only a violation of state law, but denied him the due process of law

guaranteed by the Fourteenth Amendment." 513 U.S. at 366; *see also id.* at 365 ("[i]n his

direct appeal in state court, Henry did not label his claim a federal due process violation . .

."). Thus, the Supreme Court found that without specifically asserting a "federal

Constitutional right in the state proceedings" that Henry's federal claim had not been fairly

3

presented. *Id*. at 365-66.    Here, Mr. Sims did exactly what *Duncan* requires: Mr. Sims "claim[ed] that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment." *Id*. at 366.

Next, it must be kept in mind that Mr. Sims alleged two distinct Constitutional violations within Ground One - First, he argued that his federal Due Process rights were violated by the state trial court's failure to follow state evidentiary rules governing other bad acts/sexual misconduct evidence.  Doc. 5 at 16-21; *see also Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980) (A State created "liberty interest is one that the Fourteenth Amendment preserves against arbitrary deprivation by the State").  And Second, he argued the evidence of acts occurring in Morocco was so prejudicial to render his trial fundamentally unfair.  Doc. 5 at 21-24.  The Report and Recommendation further faults Mr. Sims, as to the second Constitutional theory, for not arguing in state court how the evidentiary violation "'fatally infected the trial.'"  Doc. 20 (citing *Revilla v. Gibson*, 283 F.3d 1203, 1212 (10th Cir. 2002)). Yet, Mr. Sims argued on direct appeal at length that the Morocco evidence was so prejudicial as to render his trial unfair.  *See* Brief of Appellant, OCCA No. F-2020-56, p. 18 (Jan. 15, 2021) (reproduced at Doc. 14-3) ("In this circumstance, the probative value, if any, of DMS's allegations of sexual abuse occurring in Morocco was substantially outweighed by the danger of unfair prejudice."; *id*. at p. 19 ("This evidence was highly inflammatory and prejudicial; if believed, DMS's allegations of repeated rapes and sexual abuse occurring in Morocco were too much for Mr. Sims's jury to overlook.  One cannot be confident he was convicted of the

charged offenses as opposed to what DMS alleged occurred in Morocco"). It is Mr. Sims's position that both of his distinct alternative Constitutional claims were properly exhausted in state court.

Additional evidence of exhaustion is that the Report and Recommendation found that the OCCA rendered "merits" decisions on the Constitutional claims and that the same are entitled to deference under 28 U.S.C. § 2254(d). Doc. 20 at 18 ("the OCCA's ruling on Petitioner's evidentiary claim is sufficient to trigger AEDPA deference"). The Magistrate Judge's application of AEDPA deference is somewhat a non-sequitur with the Report and Recommendation's exhaustion-related finding that "Petitioner did not provide the OCCA a fair opportunity to review the constitutional claim before this Court." Doc. 20 at 13. It seems a stretch to contend that the OCCA would conduct merits review of Constitutional claims not actually presented by Mr. Sims. Ultimately, Mr. Sims agrees with the Report and Recommendation's assessment that his Ground one claims must be reviewed through the deferential lens of Section 2254(d). However, he respectfully contends the OCCA's decision was unreasonable as to the law and facts.

### ii.    The Report and Recommendation's alternative rationale that the OCCA's decision did not violate the AEDPA is incorrect.

DMS testified extensively at trial as to sexual abuse and other misconduct perpetrated against her during two trips with Mr. Sims to the foreign country of Morocco. Yet such evidence was admitted in violation of Oklahoma's evidentiary rules requiring notice and that such evidence must be proven by clear and convincing evidence prior to admission. *See, e.g.,*

5

Okla. Stat. tit. 12, §§ 2413 and 2414. While Mr. Sims agrees federal habeas relief is generally not available to correct errors of state law, the trial court's failures to extend Mr. Sims the protections of the evidence code served to violate his Fourteenth Amendment Right to Due Process. *See, e.g., Hicks*, 447 U.S. at 346; *Vitek v. Jones*, 445 U.S. 480, 488 (1980) ("state statutes may create liberty interests that are entitled to the procedural protections of the Due Process Clause of the Fourteenth Amendment"). Second, the evidence of alleged misconduct occurring in Morocco, including DMS's claim that Mr. Sims raped her "every night" during her first trip there, was so prejudicial as to render the trial fundamentally unfair. Tr. I, 190; *see Ochoa v. Workman*, 669 F.3d 1130, 1144 (10th Cir. 2012) (citing *Payne v. Tennessee*, 501 U.S. 808, 825 (1991)); *Andrew v. White*, 604 U.S. __, 145 S.Ct. 75, 81 (2025) (holding rule that "the Due Process Clause can in certain cases protect against the introduction of unduly prejudicial evidence at a criminal trial" is clearly established federal law).

The Report and Recommendation found that the OCCA's plain error review was sufficient to constitute a merits ruling and "trigger AEDPA deference." Doc. 20 at 18. It found the OCCA's "plain error test is rooted in due Process." *Id*. (quoting *Thornburg v. Mullin*, 422 F.3d 1113, 1124 (10th Cir. 2004)). Mr. Sims does not contend otherwise. *See* Doc. 5 at 16 (acknowledging the OCCA conducted merits review, but contending the state court "decisions were contrary to clearly established federal law and/or were unreasonable as to the state court's application of the law or determination of the facts.") Mr. Sims

respectfully disagrees with the Report and Recommendation's various findings that the state court decision was reasonable.

First, the OCCA made the unreasonable fact determination that there is "no evidence of unfair surprise" in relation to lack pre-trial notice about the DMS's allegations of abuse and misconduct occurring in Morocco. Doc. 5, Att. 1 at 3. The Magistrate Judge found this finding reasonable, based on the record. Doc. 20 at 21. Yet Mr. Sims was never actually notified that the state would seek to admit the allegations of events occurring in Morocco at trial. The State filed a pre-trial "Notice of Intent to Use Evidence of Other Bad Acts/Crimes or Res Gestae Evidence and/or In the Alternative Notice of Title 12 Section 2413/2414 Evidence." O.R. 43-44. It is obvious this was a boilerplate form document which only specifically identified the following as evidence it sought to admit:

> 1. The Defendant raped, verbally, and physically abused T.S. on numerous occasions. More specifics are detailed in the written discovery which was provided to the defense on May 2, 2019.

O.R. 44. T.S. is Mr. Sims's wife Tammy Sims who testified at trial. The state did not include any reference in its notice pleading whatsoever to the other crimes/ sexual misconduct alleged to have occurred in Morocco.

The Report and Recommendation construes boilerplate language in the form mentioning "commission of other offenses of *child* molestation" as perhaps putting Mr. Sims on notice of the Morocco allegations. Doc. 20 at 21(emphasis in original). Mr. Sims respectfully disagrees. When considered in context, the Notice merely provides generally

7

that the specified allegations regarding Tammy Sims were admissible under the evidence code: "**Such** evidence of the Defendant's commission of other offenses of child molestation and sexual assault offenses are admissible as probative propensity evidence under Okla. Stat. tit. 12, §§ 2414 and 2413." O.R. 44 (emphasis added). This general statement as to the law in no way put Mr. Sims on notice that the state sought to introduce evidence of misconduct and sexual abuse occurring in Morocco. The state court's and Magistrate Judge's findings otherwise are unreasonable.

Next, Mr. Sims respectfully disagrees with the Report and Recommendation found the OCCA's determination that DMS's testimony about what allegedly occurred in Morocco was supported by clear and convincing evidence. Doc. 20 at 22-23. Oklahoma law requires sexual propensity evidence such as at issue here to be proven by clear and convincing evidence prior to admission. *See, e.g., Brewer v. State*, 450 P.3d 969, 671 (Okla. Crim. App. 2019) (citing *Horn v. State*, 204 P.3d 777, 786 (Okla. Crim. App. 2009)). For the reasons asserted in his Brief in Support and Reply Brief, Mr. Sims continues to assert that DMS's testimony failed to prove by the weighty standard of clear and convincing that Mr. Sims committed the alleged rapes, abuse, and other misconduct in Morocco. *See* Doc. 5 at 20-21; Doc. 19 at 7-8. Essentially, DMS's testimony was the only actual evidence about the rapes and abuse allegedly inflicted in Morocco by Mr. Sims – there were no witnesses who observed Mr. Sims behavior in Morocco, physical evidence, forensic evidence, or exhibits, to establish DMS's allegations by clear and convincing evidence. While the Magistrate

Judge found some attenuated corroboration in the record (conflicted statements from Tammy Sims about whether she had been sexually abused by Mr. Sims and the uncontested fact that DMS had a medical hymenoplasty procedure during the second trip to Morocco), Mr. Sims disagrees that the same establishes DMS's allegations by clear and convincing evidence.

And lastly, Mr. Sims disagrees with the Report and Recommendation's finding that in light of the entire record "the admission of the Morocco evidence did not render the trial fundamentally unfair." Doc. 20 at 23. This finding was hinged upon the premise that DMS testified at "length and with articulate detail about the abuse occurring specifically in Yukon, Oklahoma, the crimes with which Petitioner was charged." *Id*. However, Review of DMS's trial testimony reveals that of her 60 pages of direct examination testimony (Tr. I, 174-234) only 11 pages were specifically focused on the crimes alleged to occur in Yukon, Oklahoma (Tr. I, 198-208). Even the OCCA acknowledged that the Morocco evidence was highly prejudicial in finding that "convincing proof of [DMS's] shocking allegations was entirely necessary to obtain convictions on these charges." Doc. 5, Att. 1 at 5. DMS's allegations about what Mr. Sims allegedly did to her in Morocco formed the centerpiece of the state's case and rendered the trial fundamentally unfair by creating the very likely possibility that the jury convicted Mr. Sims for conduct allegedly occurring in Morocco and for which the state had no jurisdiction to prosecute him. *See* Doc. 5 at 21-23 (explaining how the Moroccan evidence rendered the trial fundamentally unfair).

For the reasons stated herein, in his Brief in Support, and in his Reply Brief, Mr. Sims

9

respectfully requests the Court issue the writ.

**Ground Two**   **The trial court's failure to instruct the jury as to the limited purpose for which it could consider evidence of crimes and sexual abuse occurring in Morocco violated Mr. Sims's Constitutional rights to Due Process and a fair trial.**

Mr. Sims's Ground Two claim was addressed at pages 24-31 of the Report and Recommendation.  Doc. 20. Not only was the prejudicial Morocco evidence admitted in violation of state evidentiary rules, Mr. Sims's jury was also not instructed as to the limited purposed for which it could consider that evidence.  Regardless of defense counsel's failure to request a limiting instruction, the trial court should have *sua sponte* given one or both of the Oklahoma Uniform Jury Instructions applicable when other crimes/bad acts and/or sexual propensity evidence is introduced at trial.  OUJI-CR 9-9, 9-10A (reproduced at Doc. 5, 25-26).  The Report and Recommendation's treatment of Ground Two was much the same as Ground One - First, it found the Constitutional claim unexhausted.  Doc. 20 at 24-26.  Then, it nevertheless found the OCCA reached the merits of the Constitutional claims and further found the state court decision did not offend the AEDPA.  *Id*. at 27-31.  Mr. Sims's disagrees with both of the Report and Recommendation's reasons for denying relief.

   **i.**  **The Report and Recommendation is incorrect in concluding Mr. Sims's claim is unexhausted.**

Like it did with respect to Ground One, the Report and Recommendation found Ground Two should be denied for lack of exhaustion.  Doc. 20 at 25-26.  For the same reasons discussed above with respect to Ground One, Mr. Sims respectfully disagrees and

contends that he raised the substance of his Ground Two Constitutional claim in the OCCA.

Mr. Sims specifically argued on direct appeal that his federal Constitutional rights were

violated by the trial court's failure to *sua sponte* provide a limiting instruction with respect

to the allegations occurring in Morocco. *See* Brief of Appellant, pp. 19-20, OCCA No. F-

2020-56 (Jan. 15, 2021) (reproduced at Doc. 14-3) ("The trial court's failure to give an

appropriate limiting instruction deprived Mr. Sims of his rights to Due Process and a fair trial

in violation of . . . the Sixth and Fourteenth Amendments of the United States Constitution.").

As discussed above with respect to Ground One and incorporated herein, this is all that was

required to fairly present the substance of Mr. Sims's instant claim of Constitutional error

in state court. *See, e.g, Picard*, 404 U.S. at 278 (finding habeas petitioner need not cite

"book and verse on the federal constitution" to satisfy fair presentation requirement); see also

*Duncan*, 513 U.S. at 365-66 (faulting habeas petitioner who "did not label his claim a federal

due process violation" in state court).

> ii.  **The Report and Recommendation's alternative rationale that the OCCA's decision did not violate the AEDPA is incorrect.**

Despite its finding Ground Two unexhausted, the Report and Recommendation

alternatively found the OCCA's plain error review to constitute a merits decision as to the

Constitutional claims raised herein and sufficient to trigger AEDPA deference. Doc. 20 at

27-28. Mr. Sims agrees that the OCCA decided the merits of his Ground Two claim, but he

disagrees with the Report and Recommendation in so much as it found the state court

decision did not run afoul of Section 2254(d).

As to DMS's extensive allegations about Mr. Sims conduct in Morocco, the Jury should have been given limiting instructions including the fundamental concepts that "You may not consider this evidence as proof of the guilt or innocence of the defendant of the specific offense charged in the information/indictment" or "You may not, however, convict the defendant solely because you believe he/she committed this/these other offense(s) or solely because you believe he/she has a tendency to engage in acts of (sexual assault)/(child molestation)."  OUJI-CR 9-9 and 9-10A, respectively.  However, defense counsel did not request such instructions nor did the trial court provide them.  The OCCA denied Mr. Sims's claim because it found no "indication that [the Morocco evidence] was misused," but in doing so it also acknowledged the "prejudicial impact was considerable."  Doc. 5, Att. 1 at 6.

The Report and Recommendation first claims there is no clearly established law governing this claim.  Doc. 20 ant 20-29.  Mr. Sims respectfully disagrees – the Tenth Circuit regularly reviews challenges to jury instructions on federal habeas review.  *See, e.g., Valdez v. Bravo*, 244 Fed. App'x. 864, 868 (10th Cir. 2007); *Spears v. Mullin*, 343 F.3d 1215, 1244 (10th Cir. 2003) ("On federal habeas review, we review the alleged error in failing to instruct on voluntary intoxication in the context of the entire trial, only for the denial of fundamental fairness and due process."); *Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir. 1997).  Thus, the lack of a limiting instruction must be reviewed by this Court to determine if Mr. Sims's trial was rendered fundamentally unfair.  The Report and Recommendation is further

critical of *Estelle v. McGuire*, 502 U.S. 62 (1991), and questions whether that case can serve as clearly established federal law. Doc. 20 at 29-30. McGuire received a limiting instruction with respect to "prior injury" evidence. 502 U.S. at 75; *see also id.* at 66 n.1 (reproducing instruction). The Supreme Court held that neither the prior injury evidence nor the limiting instruction "'infused the trial with unfairness to deny due process of law'". *Id.* at 75 (citing *Lisenba v. California*, 314 U.S. 219, 228 (1941)). So in *Estelle*, the Petitioner lost, but he received a limiting instruction, unlike Mr. Sims. Just because the petitioner did not prevail, does not mean *Estelle* cannot serve as clearly established law for AEDPA purposes. Instead *Estelle* sets out the general rule for habeas review of the instructional error here: "The only question for us is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* at 72 (internal quotations omitted); *see also Andrew*, 604 U.S. ___, 145 S.Ct. 75, 81, 82 ("To the extent that the Court of Appeals thought itself constrained by AEDPA to limit *Payne* to its facts, it was mistaken. General legal principles can constitute clearly established law for purposes of AEDPA so long as they are holdings of this Court.").

Here, Mr. Sims respectfully contends the lack of limiting instruction rendered the trial fundamentally unfair resulting in a Due Process violation. He disagrees with the Report and Recommendation finding otherwise. Doc. 20 at 30-31. Even the state court could not help but acknowledge "the prejudicial impact [of the Morocco evidence] was considerable." Doc. 5, Att. 1 at 6. Yet, Mr. Sims's jury was never specifically instructed it could only consider

that evidence for a limited purpose.  Instead, the jury was bombarded with evidence of other crimes and/or sexual abuse occurring in Morocco, which was the same type of abuse alleged as the charged offenses.  The Report and Recommendation reads too much into an introductory jury instruction that informed the Jury Mr. Sims was charged with 5 counts of Child Sexual Abuse "in Canadian County, Oklahoma." Doc. 20 at 31 ("... the jury instruction reminding the jury of the same..."); *id*. at 11 (reproducing General Closing Charge-Charging Instruction" contained at ROA I, 122.)  This general instruction did nothing to apprise the jury of limited purpose it could consider the Morocco allegations.  Instead, the jury likely considered the shocking and outrageous Morocco evidence as substantive evidence of Mr. Sims's guilt.  This rendered his trial fundamentally unfair.

For the reasons discussed herein, in his Brief in Support, and in his Reply Brief, Mr. Sims respectfully requests the Court issue the Writ.

**Ground Three**      **Mr. Sims was denied the effective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution.**

Mr. Sims's Ground Three claim was addressed at pages 31-45 of the Report and Recommendation.  Doc. 20.  Numerous instances of attorney ineffectiveness largely surrounding the events alleged to have occurred in Morocco renders Mr. Sims's conviction unreliable.  In terms of cold-record based instances of ineffectiveness, counsel stood by without objecting as DMS testified at length about events occurring in Morocco, events for which Oklahoma had no jurisdiction to prosecute Mr. Sims.  For example, counsel failed to

object as DMS testified that she was raped "every night" during the first trip to Morocco, when the same testimony was in objective violation of state evidentiary rules as discussed in Ground One. Tr. I, 190. And, further allowing the Morocco evidence to infect the trial, counsel failed to request a limiting instruction, or otherwise object to the absence of one, in relation to the limited purpose for which the testimony of conduct in Morocco could be considered. As far as extra-record claims, counsel failed to consult regularly with Mr. Sims at the jail, save one visit, failed to conduct an investigation into the events occurring in Morocco so as to be in a position to rebut the same; and failed to utilize the state's discovery materials to cross-examine and impeach DMS. The OCCA, in a summary ruling, unreasonably cast counsel's shortcomings as "presumptively reasonable strategic decisions," and further found Mr. Sims's could not show a "a reasonable probability of a different outcome." Doc. 5, Att. 1 at 7. The Report and Recommendation likewise found no deficient performance, but speculated as to possible reasons to classify counsel's inaction as strategy. Mr. Sims respectfully disagrees with Report and Recommendation, as no Constitutionally reasonable strategy could account for counsel's behavior. *See Wood v. Allen*, 558 U.S. 290, 304 (2010) (whether decision was strategic is a different question than whether decision itself was Constitutionally reasonable); *see also Strickland v. Washington*, 466 U.S. 668, 690-91 (1984) ("...strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.").

15

### i.    Cold-record instances of attorney ineffectiveness relating to the Morocco Evidence.

The Report and Recommendation addressed the record based instances of ineffectiveness at pages 34-36.  Doc. 20.  Both instances of ineffectiveness surrounded the Morocco evidence – (1) counsel failed to object to DMS testimony; and (2) counsel failed to request or otherwise object to the absence of a limiting instruction.  First, Mr. Sims respectfully disagrees with the Report and Recommendations assessment that counsel had a strategic reason for allowing DMS to testify at length to being repeatedly raped and abused in Morocco.  This is precisely the sort of evidence that competent defense counsel would seek to keep out at trial, given the obvious danger of a jury misusing such evidence to convict Mr. Sims of the charged offenses.  It was not reasonable, as suggested by the Report and Recommendation, to allow DMS to testify about the Morocco evidence, so counsel could cross-examine her about the same.  *See Fisher v. Gibson*, 282 F.3d 1283, 1308 (10th Cir. 2002) (finding ineffective assistance where, *inter alia*, counsel questioned a witness in front of the jury, instead of in camera, and reintroduced a prejudicial subject on cross-examination).  Instead, the most likely scenario is that counsel failed to know the applicable Oklahoma law governing other crimes/ sexual propensity evidence (e.g. *Burks v. State*, 594 P.2d 771, 773 (Okla. Crim. App. 1979); and Okla. Stat. tit. 12, §§ 2413, 2414), or counsel was totally oblivious to the general legal principles involved in admission of DMS's allegations of crimes and abuse occurring in Morocco.  Regardless, there is no indication in the record any strategy was involved on the part of counsel.

16

Also, the Report and Recommendation found alternatively that the Morocco evidence was properly admitted as *res gestae*, thereby defeating a claim of ineffective counsel. Doc. 20 at 34. Mr. Sims respectfully disagrees. Despite, Respondent offering a similar argument on direct appeal even the OCCA declined to find the Morocco evidence to constitute *res gestae*. *See* Brief of Appellee, OCCA No. F-2020-56 (May 17, 2021) (reproduced at Doc. 14-4), passim arguing Morocco evidence was *res gestae*; *id*. at 29 (arguing ineffectiveness claim fails because Morocco evidence was properly admitted a *res gestae*). First, the trial record actually refutes that the Morocco evidence was intended as *res gestate* because it was not specifically included in the States "Notice of Intent to Use Evidence of Other Bad Acts/Crimes or <u>*Res Gestae*</u> Evidence . . ." O.R. 43-44 (alteration added). Second, the OCCA did not offer *res gestae* as a reason for its decision in denying Mr. Sims's claims surrounding the Morocco evidence. *See* Doc. 5, Att. 1 (not including any mention of *res gestae*). Respondent even conceded in its briefing herein that the OCCA "perhaps . . . did not believe the evidence was proper *res gestae*" Doc. 14 at 54.

Second, with respect to counsel's failure to request a limiting instruction advising the jury of limited purpose for which it could consider the Morocco evidence, the Report and Recommendation offers little analysis. Doc. 20 at 36. It finds reasonable the state court's determination that counsel's failure did not constitute deficient performance and did not prejudice" Mr. Sims. *Id*. Mr. Sims disagrees. Somewhat telling is that the Report and Recommendation only seems to defend the state court's finding of no prejudice as

reasonable.  *Id*.  It was clear deficient performance for counsel not to request the limiting

instruction.  Had defense counsel asked for an appropriate limiting instruction, there is no

reason the trial court would not have granted the request.  Also, even if the Court declines

to find prejudice, a finding of deficient performance could appropriately be considered within

Mr. Sims's claim in Ground 4 of cumulative error.  *See, e.g., Cargle v. Mullin*, 317 F.3d

1196, 1206-07 (10th Cir. 2003) (explaining that deficient performance must be considered

in cumulative error analysis).

> ii.    **Extra-record instances of ineffectiveness for counsel's failure to communicate with Mr. Sims, failure to conduct an adequate investigation, and failure to utilize discovery materials.**

Counsel's outside the record ineffectiveness was likewise significant and creates a

reasonable probability that had counsel functioned as envisioned by the Sixth Amendment

there exists a reasonable likelihood Mr. Sims would not have been convicted.  Trial counsel

failed to communicate with Mr. Sims, which could have informed defense strategies and

pre-trial investigation; and counsel failed to conduct any sort of reasonable investigation into

DMS's allegations; counsel failed to utilize available discovery materials to impeach DMS.

Mr. Sims's supported these allegations in the OCCA through its procedures for seeking an

evidentiary hearing on outside the record claims of ineffective counsel.  *See* Rule 3.11, *Rules

of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App.   Mr. Sims submitted

numerous affidavits and supporting materials to prove up his claims.  *See* Application for

Evidentiary Hearing on Sixth Amendment Claims (herein after "Rule 3.11 App."), OCCA

No. F-2020-56 (January 15, 2021), Exhs. 1-9 (Application and Exhibits Reproduced at Doc. 14-6). Mr. Sims won't rehash these materials here, but would rely on his Brief in Support which discussed the supporting materials at length, explained how counsel was deficient, and explained how there exists a reasonable probability Mr. Sims's would not have been convicted but for the same. *See* Doc. 5 at 35-56.

The OCCA did not offer detailed analysis as to the outside the record ineffective assistance; instead, it summarily denied all claims of ineffective assistance as "presumptively reasonable strategic decisions," which Mr. Sims did not show were "so deficient that, but for unprofessional errors, there is a reasonable probability of a different outcome. Doc. 5, Att. 1 at 7. This holding violates Section 2254(d) as it was contrary to clearly established federal law and/or was unreasonable as to the state court's application of the law or determination of the facts. The Report and Recommendation considered Mr. Sims's extra-record claims of ineffective assistance and found all of them to constitute reasonable strategy and thus not constitute deficient performance under *Strickland.* Doc. 20 at 37-44. For the reasons and authorities cited in his Brief in Support, Mr. Sims disagrees. *See* Doc. 5 at 36-39.

Mr. Sims would take this opportunity to further emphasize his claim that counsel's conduct of only meeting with Mr. Sims on one occasion at the jail and during the times he was brought from the jail to court for routine appearances constituted a constructive denial of counsel for which prejudice must be presumed. *See United States v. Cronic*, 466 U.S. 648, 658-59 (1984) (discussing circumstances in which prejudice is presumed, such as the

19

complete denial of counsel); *United States v. Soto Hernandez*, 849 F.2d 1325, 1327-28 (10th Cir. 1988) (discussing *Cronic* presumption in context of an alleged breakdown in communication); *see also Strickland*, 466 U.S. at 692 ("Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice"). Mr. Sims argued in his Brief in Support that the OCCA failed to address the merits of his *Cronic* claim; thus, the Court must properly review this instance of ineffectiveness de novo and absent constraint of the AEDPA. Doc. 5 at 43.

The Report and Recommendation analyzed counsel's failure to adequately communicate with Mr. Sims at length. Doc. 20 at 39-41. However, it failed to consider or otherwise mention de novo review, and instead applied AEDPA deference. *Id*. at 40 ("it was not unreasonable for the OCCA to disallow Petitioner a presumption of prejudice under *Cronic*"). Here, there is ample indication that the OCCA failed to consider Mr. Sims's *Cronic* claim, such that a merits adjudication cannot be presumed. *Harrington v. Richter*, 562 U.S. 26, 99-100 (2011) (finding presumption of a state court merits adjudication may not apply when "there is reason to think some other explanation for the state court's decision is more likely.") The OCCA specifically applied the *Strickland* two-prong standard in disposing of all of Mr. Sims's claims of ineffective assistance, including the *Cronic* claim regarding counsel's failure to communicate with him. Doc. 5, Att. 1 at 7 ("We review this claim under ... *Strickland* ... requiring Appellant to show . . . that Appellant's defense was prejudiced by [counsel's deficient performance]"). Thus, the OCCA overlooked and did not

decide the *Cronic* claim and, contrary to the Report and Recommendation, the Court should conduct de novo review. *See, e.g., Byrd v. Workman*, 645 F.3d 1159, 1166–67 (10th Cir. 2011).

Finally, the Report and Recommendation seemingly questions Mr. Sims's assertion that trial counsel met with him just one time at the jail on April 8, 2019 prior to charges officially being filed. *See* Doc. 20 at 37-28. Yet, Mr. Sims provided a sworn affidavit detailing how he only met his defense counsel one time at the jail. *See* Rule 3.11 App., Exh. 1 (reproduced at Doc. 14-6 at 17-20). And the Court need not solely take Mr. Sims's word for the lack of communication, the Canadian County Sheriff's office confirmed, in response to an open records request, that defense counsel only visited Mr. Sims one time on April 8, 2019. *See id.* at Exh 2 (reproduced at Doc. 14-6 at 22-23). The fact of the one jail visit has never been disproved or otherwise contested. Mr. Sims was literally on trial for his life, facing five counts of child sexual abuse (Okla. Stat. tit. 21, § 843.5(E)) with all carrying a statutory maximum of life imprisonment, yet counsel did not involve Mr. Sims in his own defense. Had counsel communicated adequately with Mr. Sims, the defense case would have be greatly strengthened. *See* Doc. 5 at 40-41 (explaining how Mr. Sims could have participated in his defense).

For the reasons asserted herein, in his Brief in Support, and Reply Brief, Mr. Sims respectfully requests the Court grant the Writ due to the ineffective assistance of counsel.

**Ground Four        The accumulation of errors acted to deprive Mr. Sims of his Constitutional rights.**

21

Mr. Sims's Ground Four claim was addressed at pages 46-48 of the Report and Recommendation.  Doc. 20.  The OCCA denied the cumulative error claim on direct appeal and the Report and Recommendation found "that determination to be reasonable."  *Id*. at 47.  Petitioner disagrees with this conclusion, and therefore objects to the Report and Recommendation.  Considering  that, at minimum,  prior counsel likely rendered deficient performance with respect to failing to object to the Morocco evidence and failing to request a limiting instruction regarding the same, not to mention it was error for the trial court not to *sua sponte* issue a limiting instruction as to that same evidence, it would seem that cumulative error would be a very appropriate mechanism to grant relief in this case.  *See, e.g., Cargle*, 317 F.3d at 1207 ("*Strickland* errors require us to assess whether there is a reasonable probability that counsel's deficient performance affected the trial outcome"); *see also id.* at 1221 (finding relief appropriate due to "inherent synergistic" effect of errors).  In any event, Mr. Sims asserts numerous Constitutional errors occurred during the state court proceedings. If such errors do not warrant relief individually, then consideration of said errors cumulatively warrants this Court's grant of the Writ.

**Request for Certificate of Appealability Pursuant to Rule 11,**
***Rules Governing Section 2254 Cases**.*

Should the Court decline to issue the Writ, in accordance with Rule 11(a), *Rules Governing Section 2254 Cases*, Mr. Sims respectfully requests that the Court issue a certificate of appealability as to one or more of the grounds raised herein at such time as it enters a final order adverse to Mr. Sims.

22

**Conclusion**

*Wherefore*, Petitioner, Paul Lewis Sims, respectfully objects to the Report and Recommendation and  prays that the Court grant him all relief to which he may be entitled in this proceeding.

Respectfully Submitted,

*s/Robert S. Jackson*
Robert S. Jackson, OBA #22189
1300 NW 10th ST.
Oklahoma City, OK 73106
Telephone:  405-602-8614
bob@bobjacksonlaw.com

ATTORNEY FOR PETITIONER

**CERTIFICATE OF SERVICE**

I hereby certify that on the date of filing, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrant:

Tessa L. Henry
Assistant Attorney General

*s/Robert S. Jackson*
Robert Jackson
